**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JAMES D. LUKETICH, SR. and )
CHRISTINE LUKETICH, )
  )
    Plaintiffs, )
  )
        v. )   2:20-cv-00315
  )
USAA CASUALTY INSURANCE )
COMPANY, )
  )
    Defendant. )

## OPINION

**Mark R. Hornak, Chief United States District Judge**

      Before the Court is Defendant's Motion to Dismiss (ECF No. 14) Plaintiffs' Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 11.) For the following reasons, Defendant's Motion to Dismiss (ECF No. 14) is **GRANTED IN PART** and **DENIED IN PART.** Counts I and II of the Amended Complaint as to certain insurance coverage survive the Motion to Dismiss, and the balance of Counts I and II, and Counts III and IV, are **DISMISSED WITHOUT PREJUDICE** but with leave to amend.

### I.      BACKGROUND

      A phone call, a multi-million-dollar home renovation, and a fire. Based on the Court's consideration of the facts alleged in Plaintiffs' Amended Complaint, these are the three main events that give rise to the present action. Plaintiffs are Dr. James D. Luketich and Christine Luketich, husband and wife, who bring this lawsuit against their home insurer, Defendant USAA Casualty Insurance Company, under four theories of liability: breach of contract; promissory estoppel, statutory bad faith, and violations of Pennsylvania's Unfair Trade Practices and

1

Consumer Protection Law (UTPCPL). (ECF No. 11.) The Court draws the alleged facts from Plaintiffs' Amended Complaint.

Plaintiffs own a residential property at 30 Sweet Water Lane, Pittsburgh, Pennsylvania. (*Id*. at 2 ¶ 4.) The property is covered by a homeowner's insurance policy issued by Defendant. (*Id*.) In July 2016, Plaintiffs sought to increase their policy coverage due to renovations and an anticipated increase in the property's value. (*Id*.) In or around July 2016, Plaintiffs allegedly notified Defendant, via one of Defendant's call center representatives, of their intended renovations and requested a coverage increase "sufficient to cover their damages in the event of a total loss." (*Id*. at 5 ¶ 22) At the time Plaintiffs contacted Defendant, Plaintiffs' coverage limits included two million five hundred thousand ($2,500,000) dollars in dwelling protection; two hundred fifty thousand ($250,000) dollars for "other structures" protection; and one million two hundred fifty thousand ($1,250,000) dollars for personal property protection. (*Id*. at 3 ¶¶ 11–13.) In addition to the base coverage limits, Plaintiffs' policy also includes a "Home Protector Coverage" provision that "extends coverage by an amount equivalent to 25% of the Policy limits for a covered loss." (*Id*. at 3 ¶¶ 11–13.) Essentially, the Home Protector Coverage's purpose is to provide extended coverage in the event a homeowner's losses exceed the policy's coverage limits. (*Id*.)

During the alleged July 2016 phone conversation, Defendant's call center representative informed Plaintiffs that Defendant could increase Plaintiffs' base coverage amount to three million ($3,000,000) dollars in dwelling protection; one million five hundred thousand ($1,500,000) dollars in contents or personal property protection; and three hundred thousand ($300,000) dollars in other structures coverage.[1] (*Id*. at 5 ¶ 23.) However, Defendant would not be able to "raise the

---

[1] The Court hereinafter refers to Plaintiffs' base coverage as the three million ($3,000,000) dollar base coverage.

Policy limits beyond" the three million ($3,000,000) dollar base coverage without first conducting a property inspection. (*Id*. at 5 ¶ 23.) According to Plaintiffs, the call center representative provided further assurances that "while awaiting the . . . inspection and coverage increase[,] . . . the Home Protector Coverage, coverage for which [Plaintiffs] had paid an extra premium . . . would provide additional coverage should a loss exceed the [three million ($3,000,000) dollar base coverage.]" (*Id*. at ¶ 26.) Defendant subsequently arranged a property inspection of 30 Sweetwater Lane, to be conducted by Castle Inspection, one that was later cancelled at Defendant's behest and was never rescheduled. (*Id*. at ¶ 27.) Thereafter, Plaintiffs allege that Defendant never contacted them about a subsequent coverage increase over the initial increases confirmed over the phone by Defendant's call center employee. (*Id*. at ¶ 28.)

In summer and fall 2016, Plaintiffs began renovations to 30 Sweetwater Lane, which continued for approximately two years. (*Id*. at 6 ¶ 30–31.) The renovations were still ongoing as of February 2019. (*Id*.) On February 8, 2019, a fire occurred "at or near the garage of the home" causing extensive damage to the residence as well as Plaintiffs' property that was in it. (*Id*. at ¶ 32.) Plaintiffs immediately notified Defendant of the fire and subsequent damage, and Defendant tendered the three million ($3,000,000) base coverage. (*Id*. at ¶ 35.) Because the damage caused by the fire exceeded the amount of Plaintiffs' base coverage, Plaintiffs sought additional payment under their "Home Protector Coverage," which amounted to seven hundred fifty thousand ($750,000) dollars. (*Id*. at 7 ¶ 38.) On August 5, 2019, Defendant denied Plaintiffs' claim for the additional Home Protector Coverage. (*Id*. ¶ 39.) According to its denial letter, Defendant rejected Plaintiffs' request because "there is no documented evidence of any communication from [Plaintiffs] wherein [they] advised [Defendant] that [their] home was actively undergoing a substantial multi-million-dollar renovation." (*Id*. at ¶¶ 39–40.) As a prerequisite to obtaining

3

coverage under this provision, the policy requires that policy holders notify Defendant within ninety (90) days of beginning renovation work. (*Id*. at ¶ 41.) Defendant also contends that because Plaintiffs' home was not fully insured at the time of loss, they could not access the Home Protector Coverage. (ECF No. 15, at 11.)

Following Defendant's rejection letter, Plaintiff brought the following claims in this action: (1) breach of contract for Defendant's failure to raise homeowner coverage and failure to tender the Home Protector Coverage amount; (2) bad faith under Pennsylvania statute 42 PA. CONST. STAT. § 8371; (3) promissory estoppel; and (4) violations of the UTPCPL. (*Id*. at ¶¶ 43–97.) Defendant now moves to dismiss each of these counts for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.   <u>LEGAL STANDARD</u>

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." The Supreme Court's decision in *Ashcroft v. Iqbal* held that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough to survive a Rule 12(b)(6) motion. 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, a plaintiff's factual allegations must "raise a right to relief above the speculative level" and state a plausible claim for relief. *Twombly*, 550 U.S. at 555. In reading the complaint, the Court should "accept all factual allegations as true, construe the complaint in a light most favorable to the plaintiff, and determine whether, under a reasonable reading of the complaint, the plaintiff may be entitled to relief." *Blanyar v. Genova Prods. Inc.*, 861 F.3d 426, 431 (3d Cir. 2017) (citing *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)).

The Third Circuit further guides lower courts to utilize a three-part framework. First, the Court "identif[ies] the elements of the claim." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). Second, the Court "review[s] the complaint to strike conclusory allegations." *Id.* Third, the Court "look[s] at the well-pleaded components of the complaint and evaluat[es] whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Id.* If the facts alleged in the complaint "show" that the plaintiff is entitled to relief, the motion to dismiss should be denied. *See Fowler*, 578 F.3d at 210–11.

## III.   <u>DISCUSSION</u>

The Court first briefly summarizes its rulings. Regarding Plaintiffs' Count I breach of contract claim, the Court denies Defendant's Motion to Dismiss to the extent that Plaintiffs seek recovery of seven hundred fifty thousand ($750,000) dollars under the Home Protector Coverage. To the extent that Plaintiffs assert a breach of contract claim beyond the Home Protector Coverage (*e.g.*, for the breach of contract claim based on Defendant's failure to increase policy limits), Defendant's Motion to Dismiss is granted without prejudice and with leave to amend. As for Plaintiffs' statutory bad faith claim under Count II, the Court denies Defendant's Motion to Dismiss without prejudice, but only to the extent that Plaintiffs' bad faith claim relies on the alleged breach of contract claim that survives Defendant's Motion to Dismiss. The Motion to Dismiss Count II is otherwise granted, but without prejudice and with leave to amend. Finally, Plaintiffs' Counts III and IV, claims based on promissory estoppel and violations of the UTPCPL, respectively, are dismissed without prejudice and with leave to amend. The Court will discuss those determinations in turn.

### A. __Count I: Breach of Contract__

Plaintiffs rest their breach of contract claim on the following events: (1) Defendant's failure to inspect 30 Sweetwater Lane and increase Plaintiffs' policy limits, thus causing Plaintiffs' property to be underinsured at the time of the fire, and (2) Defendant's failure to tender the Home Protector Coverage in its full amount ($750,000). (ECF No. 11, at 9 ¶¶ 51–53.) To establish a breach of contract claim under Pennsylvania law, a plaintiff must prove (1) the existence of a contract, which requires a showing of offer, acceptance, and consideration, *see Jenkins v. Cty. of Schuylkill*, 658 A.2d 380, 383 (Pa. Super. Ct. 1995) (citing *Schreiber v. Olan Mills*, 627 A.2d 806, 808 (Pa. Super. Ct. 1993)); (2) the breach of a duty imposed by the contract; and (3) resulting damages. *See CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999).

#### a. __Failure to Increase Policy Limits__

Here, Plaintiffs seek contract damages for Defendant's failure to reschedule the initial inspection of 30 Sweetwater Lane and its subsequent failure to reach a decision regarding Plaintiffs' requested coverage increase. (ECF No. 11, at ¶¶ 51–53.) Plaintiffs further allege that Defendant's failures resulted in Plaintiffs' residential property being underinsured at the time of the fire. (*Id.*) In its Motion to Dismiss, Defendant argues that Plaintiffs' breach of contract claim fails as a matter of law in this context because they have not "alleged the existence of a contract between them and [Defendant] for increased policy limits." (ECF No. 15, at 11.)

Plaintiffs' Amended Complaint does not make a plausible showing of the existence of a contract for base coverage policy limits greater than the three million ($3,000,000) dollar base coverage that Plaintiffs allege. The Court, in addressing Plaintiffs' specific allegations, further concludes that Plaintiffs have not made a plausible showing of a contract breach for an alleged

failure to increase policy limits. Here, the contractual duty imposed on Defendant was to tender coverage for Plaintiffs' losses up to the policy limits, an obligation Defendant satisfied when it tendered the three million ($3,000,000) dollar base coverage. (ECF No. 11-1.) Restated, the Amended Complaint does not make a plausible showing that Defendant had an affirmative contractual duty under the insurance contract to increase coverage any time a holder might so request. (ECF No. 11, 11-1.)

Plaintiffs further argue that their reasonable expectations under the insurance contract give rise to Defendant's breach of contract for failure to increase the policy limits. (ECF No. 11, at 8 ¶¶ 48–50.) Elaborating on this point in their Response to Defendant's Motion to Dismiss, Plaintiffs assert that they "reasonably relied upon [Defendant] to establish limits that would be sufficient to cover the cost to repair or replace the renovated dwelling." (ECF No. 19, at 10.) Under Pennsylvania law, however, this allegation does not amount to a plausible showing that Plaintiffs are entitled to relief for Defendant's breach of a contractual duty. While courts should consider the insured's reasonable expectation of coverage under a non-commercial insurance contract, *see Tonkovic v. State Farm Mut. Auto. Ins. Co.*, 521 A.2d 920, 926 (Pa. 1987), an insured has no reasonable expectation under an agreement where "the insurer has neither told the insurer that a policy would cover certain events that it does not, nor made a change in the terms of coverage after the insured has agreed to purchase insurance without informing the insured of the change and its consequences." *Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1312 n.5 (3d Cir. 1994) (interpreting the Supreme Court of Pennsylvania's approach to reasonable expectations of the insured in *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563 (Pa. 1983)). Although *Standard Venetian Blind Co.* does not present factual allegations identical to those here, the Third Circuit's interpretation in *Bensalem Township* of the

7

holding in *Standard Venetian Blind Co.* does provide guidance. Namely, whether an insured's reasonable expectations under the contract creates a duty or obligation on the insurer is limited in scope. *Bensalem Twp.*, 38 F.3d at 1312 n.5. Here, Plaintiffs have not made a plausible showing that under the contract that is pled to have actually existed here, Defendant was under any express duty to inspect the residence and the renovations and thereafter increase Plaintiffs' coverage because Plaintiffs requested it. (ECF No. 11-1.) Nor have Plaintiffs sufficiently alleged a reasonable expectation of such a contractual duty by showing that Defendant "actively provided misinformation about scope of coverage," or "passively fail[ed] to notify the insured of changes in the policy," resulting in Plaintiffs' receipt of "something other than what it thought it purchased." *See Bensalem Twp.*, 38 F.3d at 1312 n.5. Rather, based on the facts alleged in Plaintiffs' Amended Complaint, Defendant via its call center representative made clear to Plaintiffs that base coverage would not exceed the three million dollar ($3,000,000) base without an inspection. (ECF No. 11, at 5 ¶ 23.) Whether rescheduling an inspection would have been a best practice on behalf of Defendant is up for debate, but under Pennsylvania law, the Plaintiffs' inquiry to the call center and the call center representative's scheduling of a later cancelled inspection is not a sufficient basis for creating an affirmative contractual duty to provide higher base coverage. *Bensalem Twp.*, 38 F.3d at 1312 n.5 (discussing *Standard Venetian Blind Co.*, 469 A.2d at 563).

Simply put, Plaintiffs have not alleged the existence of a contract for coverage greater than the three million ($3,000,000) dollar base, an amount that Defendant has already tendered. *See Jenkins v. Cty. of Schuylkill*, 658 A.2d 380, 383 (Pa. Super. Ct. 1995) (reciting the contract formation requirements in Pennsylvania). At best, the asserted back and forth between the Plaintiffs and the call center representative about the coverage increase request and a scheduled

but failed inspection would not have been sufficient to create a contractual obligation on the part of the Defendant to actually increase the base amount coverage. To conclude, the portion of Plaintiffs' Count I to the extent that it seeks recovery based on the breach of a contract for Defendant's failure to increase policy limits is dismissed. But, because the Court cannot conclude that there is no plausible possible amendment, this dismissal is with leave to amend.

### b. <u>Failure to Tender Home Protector Coverage Amount</u>

As to the second breach of contract claim in Count I, Plaintiffs allege that Defendant's rejection of Plaintiffs' claim for additional compensation under the Home Protector Coverage constituted a breach of contract. (ECF No. 11, at 9 ¶ 56.) Plaintiffs argue they are entitled to the additional coverage because they satisfied the provision's prerequisites by timely notifying Defendant "of the contemplated and impending value-increasing renovations." (*Id.*) Defendant, in the alternative, argues that Plaintiffs have misinterpreted the Home Protector Coverage in assuming that they need only satisfy the policy's notification requirement to access the additional coverage. (ECF No. 15, at 10.) Under Defendant's interpretation, Plaintiffs (1) must notify Defendant of any value-increasing renovation *and* (2) the residence would have to have been fully insured at the time of loss. (*Id.*) Defendant argues that because 30 Sweetwater Lane was "not fully insured" at Plaintiffs' "policy inception on August 22, 2018," Plaintiffs, despite notifying Defendant of the renovations, failed to meet the provision's condition precedents, and Defendant is thus not obligated to tender the additional seven hundred and fifty thousand ($750,000) dollars. (*Id.*)

If the Court were to construe the Home Protector Coverage as Defendant proposes, it would not only be upholding an illusory promise of coverage, but it would also be running afoul basic insurance contract interpretation principles under Pennsylvania law. The Supreme Court of

Pennsylvania has addressed illusory insurance coverage in *401 Fourth Street Inc. v. Investors Insurance Group*, 879 A.2d 166 (Pa. 2005). District courts, in applying Pennsylvania law, have noted that although that case solidifies the Pennsylvania Supreme Court's employment of this doctrine, the case "does not set forth any formal standard for evaluating when coverage is illusory." *St. Mary's Area Water Auth. v. St. Paul Fire & Marine Ins. Co.*, 464 F. Supp. 2d 397, 412 (M.D. Pa. 2006). Accordingly, a district court in our Circuit looked to the law of Indiana for further guidance in interpreting the contours of illusory coverage and concluded that in Pennsylvania, "an insurance provision is illusory if a premium was paid for coverage which would not pay benefits under any reasonably expected set of circumstances[.]" *Great N. Ins. Co. v. Greenwich Ins. Co.*, No. 05-635, 2008 WL 2048354, at *4 (W.D. Pa. May 12, 2008) (internal quotation marks omitted) (citing *St. Mary's Area Water Auth.*, 464 F. Supp. 2d at 412 (quoting *Fid. & Guar. Ins. Underwriters, Inc. v. Everett I. Brown Co.*, 25 F.3d 484, 490 (7th Cir. 1994))). When a court determines a provision to be illusory, it "should be enforced in a way that protects the insured's reasonable expectations." *Id.* (citing *City of Lawrence v. Western World Ins. Co.*, 626 N.E.2d 477, 480 (Ind. App. 1993)).

Here, the Homeowner Protector Coverage, as argued for by Defendant, would be considered an illusory promise because Defendant would never be obligated to tender additional coverage if a policy holder was not fully insured at the time of a loss, which would logically always be the case if a holder was seeking additional compensation after suffering losses exceeding base coverage, and which is of course the reason that the Home Protector coverage exists in the first place. Because Defendant's argued-for construction of the provision would be an illusory promise of coverage, the Court must construe the Home Protector Coverage "in a way that protects the insured's reasonable expectations." *St. Mary's Area Water Auth.*, 464 F. Supp.

2d at 412. Therefore, taking Plaintiffs' allegations as true and drawing the reasonable inferences from them, the Court accepts Plaintiffs' argument that notifying Defendant of the renovations was sufficient to access coverage in these circumstances, namely, where it is alleged that the carrier stated that it would conduct any needed inspections it believed were necessary to increase the coverage, and then never did. (ECF No. 11, at 9 ¶ 56.) In support of its conclusion, the Court is also persuaded by Plaintiffs allegation that they paid an extra premium for the Home Protector Coverage (*Id*. at 5 ¶ 26) with the reasonable expectation that they would be compensated via such additional coverage under the Home Protector Coverage provision if their losses exceeded their base coverage. *Great N. Ins. Co.*, 2008 WL 2048354, at *4. In sum, based on Plaintiffs' factual allegations and Plaintiffs' reasonable expectation of coverage under the Home Protector Coverage, the Court concludes that Plaintiffs have made a plausible showing that Defendant's failure to tender the Home Protector Coverage constituted a breach of contract. This portion of Plaintiffs' breach of contract claim thus survives the motion to dismiss.

### B. <u>Count II: Statutory Bad Faith</u>

Plaintiffs bring Count II of their Amended Complaint pursuant to 42 PA. CONST. STAT. § 8371, alleging that they satisfied all necessary conditions of the Homeowner Protector Coverage, and Defendant acted in bad faith when it denied Plaintiffs' claim for coverage. (ECF No. 11, at 10–11 ¶¶ 63–68.) To state a claim of bad faith under § 8371, an insured must prove, by clear and convincing evidence, *see W.V. Realty, Inc. v. N. Ins. Co.*, 334 F.3d 306, 312 (3d Cir. 2003); *Cowden v. Aetna v. Cas. & Sur. Co.*, 134 A.2d 223, 229 (Pa. 1957), that "the insurer (1) did not have a reasonable basis for denying benefits under the insurance policy; and (2) knew or recklessly disregarded its lack of reasonable basis for denying the claim." *FAPD, LLC v. Auto-Owners Ins. Co.*, No. 18-000428, 2018 WL 3435064 (W.D. Pa. July 17, 2018) (citing *NW Mut.*

*Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005) (applying Pennsylvania law)). The insured must also show that the "insurer breached its duty of good faith through some motive of self interest or ill will." *Babayan*, 430 F.3d at 137 (quoting *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 501 (Pa. Super. Ct. 2004)). As a non-exhaustive list, bad faith can include: "an unreasonable delay in handling claims; a frivolous or unfounded refusal to pay; a failure to communicate with the insured; acting in a dilatory manner; and settlement offers which bear no reasonable relationship to the insured's reasonable medical expenses." *Rowe v. Nationwide Ins. Co.*, 6 F. Supp. 621, 631 (W.D. Pa. 2014) (citing *Willow Inn, Inc. v. Public Serv. Mut. Ins. Co.*, 399 F.3d 224, 235 (3d Cir. 2005)).

In their Response, Plaintiffs reiterate the facts alleged in their Amended Complaint and more succinctly state that they fulfilled all obligations necessary to acquire coverage under the Home Protector Coverage: they "paid all premiums, notified [Defendant] of the pending renovations to the Property, and timely submitted all claims for coverage in a manner prescribed by their Policy." (ECF No. 19, at 12.) Plaintiffs thus assert that Defendant "unreasonably denied the benefits" and "had knowledge of their lack of reasonable basis for denying benefits." (*Id.*) As described earlier, the Court does not adopt Defendant's interpretation of the Home Protector Coverage (at least not at this pleading juncture) and thus cannot accept Defendant's argument that its basis for denial of Home Protector Coverage was reasonable because Plaintiffs "could not show that their property was fully insured for replacement cost at policy inception." (ECF No. 15, at 16.) Such an interpretation would construct an illusory promise of coverage, which the Court has already determined it should not entertain.

Taking Plaintiffs' factual allegations regarding the denial of Homeowner Protector Coverage as true, the Court concludes that Plaintiffs' Amended Complaint facially shows a

plausible claim for relief regarding Defendant's alleged bad faith denial of the Home Protector

Coverage. The Court further concludes that Plaintiffs' allegations of bad faith for any actions or

inactions other than Defendant's denial of Home Protector Coverage fail for lack of a plausible

showing of entitlement to relief.[2] Accordingly, the Court denies Defendant's Motion to Dismiss

as to Count II of Plaintiffs' Amended Complaint without prejudice to the extent that the alleged

breach of contract claim survives the Motion to Dismiss, *e.g.*, as to the Home Protector

Coverage, and grants the Motion to Dismiss as to Count II in all other respects, but without

prejudice and with leave to amend.

## C.  Count III: Promissory Estoppel

In Count III, Plaintiffs rely on the affirmative doctrine of promissory estoppel to obtain

compensation beyond the alleged three million ($3,000,000) dollar base coverage and to enforce

their rights under the Homeowner Protector Coverage. (ECF No. 11, at 14–16 ¶¶ 75–91.) It is

well settled under Pennsylvania law that promissory estoppel cannot create an insurance contract

where none existed. *See Wasilko v. Home Mut. Cas. Co.*, 232 A.2d 60, 63 (Pa. 1967) (citing

*Donovan v. New York Cas. Co.*, 94 A.2d 570, 572 (Pa. 1953) ("The doctrine of waiver or

estoppel cannot apply to or create a contract where none existed.")). Applying Pennsylvania law,

federal courts within our Circuit have concluded the same. *See Atain Ins. Co. v. Jonco Trading*

---

[2] In their Amended Complaint, Plaintiffs allege numerous "actions and inactions" by Defendant that constitute bad faith. (ECF No. 11, at 11–13 ¶ 67 a–t.) The Court, as noted above, will permit allegations of bad faith pertaining to Defendant's denial of the Home Protector Coverage to move forward. As the Court discussed in section III.A., *supra*, the Plaintiffs have not plausibly alleged that Defendant had a contractual duty to increase coverage any time a holder may so request, nor have they alleged facts sufficient to demonstrate bad faith in Defendant's failure to follow up with an inspection when that was not an affirmative duty under the contract. *Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1312 n.5 (3d Cir. 1994) (interpreting the Supreme Court of Pennsylvania's approach to reasonable expectations of the insured in *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563 (Pa. 1983)). As such, the Court agrees with Defendant that in "the absence of insurance coverage, there can be no bad faith by the insurer as a matter of law." (ECF No. 15, at 15.) Accordingly, the following subparagraphs in paragraph sixty-seven (67) of Plaintiffs' Amended Complaint, detailing the "actions and inactions" in support of their bad faith claims, may continue past the motion to dismiss stage: a, j, l, m, n, o, r, s, t. (ECF No. 11, at 11–13.) All other subparagraphs Plaintiffs alleged in support of their bad faith claim will not be considered moving forward unless sufficiently averred in any further Amended Complaint.

*Inc.*, No. 12-673, 2013 WL 11090742, at *18 (W.D. Pa. Dec. 17, 2020) (holding that estoppel could not be used to create an insurance contract where none existed); *Great N. Ins. Co. v. Greenwich Ins. Co.*, No. 05–635, 2007 WL 2458477, at *18 (W.D. Pa. Aug. 24, 2007) ("[T]he doctrine of waiver or estoppel cannot create an insurance contract where none existed (quoting *Pfeiffer v. Grocers. Mut. Ins. Co.*, 379 A.2d 118, 121 (Pa. Super. Ct. 1977)), *vacated in part on other grounds*, No. 05-635, 2008 WL 2048354 (W.D. Pa. May 12, 2008).

Here, Plaintiffs raise an affirmative promissory estoppel claim to enforce an "[1] increase in coverage and [2] availability of the Home Protector Coverage." (ECF No. 11, at 16 ¶ 90.) Regarding their promissory estoppel claim for increased policy base coverage, Pennsylvania law dictates that Plaintiffs cannot use promissory estoppel to create a contract, in equity, for higher insurance coverage, where no such contract existed.[3] *See Wasilko*, 232 A.2d at 63; *see also supra* section III.A (concluding that Plaintiffs have not alleged a contract for an increased coverage amount). As for additional coverage via the Home Protector Coverage, Plaintiffs' insurance contract, as alleged, already includes this coverage. (ECF No. 11, at 3 ¶ 12.) To the extent that Plaintiffs rely on the doctrine of promissory estoppel to recover the compensation allegedly due under the Home Protector Coverage, promissory estoppel is not the appropriate equitable doctrine.[4] *MTR Gaming Grp., Inc. v. Arneault*, 899 F. Supp. 2d 367, 381 (W.D. Pa. 2012) (citing *Carlson v. Arnot-Ogden Memorial Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990)) ("[C]laims for

---

[3] In their Response, Plaintiffs emphasize that their "Amended Complaint specifically avers that an insurance contract exists whereby USAA promised certain benefits," and that "Plaintiffs experienced the resulting prejudice in that they were underinsured at the time of the fire." (ECF No. 19, at 16.) As noted above, where a contract for higher coverage did not exist, the weight of Pennsylvania case law does not permit Plaintiffs' assertion that they are entitled to higher coverage via the doctrine of promissory estoppel.

[4] It appears to the Court that Plaintiffs may be attempting to allege facts that would estop Defendant from denying additional coverage, rather than attempting to create equitable coverage that would be repetitive and barred by the express coverage Plaintiffs seek to prove. *Carlson v. Arnot-Ogden Memorial Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990).

promissory estoppel cannot proceed where an express contract is present."). To the extent that matters asserted within this portion of Plaintiffs' Amended Complaint go to the proof of the claims at any other counts rather than a "stand alone" claim, the allegations will not be stricken; however, as pled, Plaintiffs' allegations do not and cannot assert a basis to expand or extend coverage, via the equitable principle of promissory estoppel, beyond what Plaintiffs hope to prove was part of an agreed-upon contract of insurance. Accordingly, Defendant's Motion to Dismiss as to Count III is granted without prejudice and with leave to amend.

### D. **Count IV: Violation of the UTPCPL**

In Count IV of their Amended Complaint, Plaintiffs allege that Defendant engaged in numerous "unfair or deceptive acts or practices" in violation of Pennsylvania's UTPCPL, 70 PA. STAT. AND CONS. STAT. ANN. §§ 202-2, et seq.[5] (ECF No. 11, at 17 ¶ 94 a–j.) While the Court agrees with Defendant that the UTPCPL "does not apply to the handling of insurance claims,"

---

[5] Citing generally to UTPCPL §§ 201-2, *et seq*., Plaintiffs allege that Defendant violated the statute in the following ways:

    a.  In misrepresenting the terms of the Policy and conditions of the coverage available to Plaintiffs;

    b.  In representing to Plaintiffs that the Home Protector Coverage was available to them in the event of a loss, while concealing and intentionally misrepresenting the alleged pre-requisites for such a claim;

    c.  In misrepresenting the ability or intention of USAA representatives to determine appropriate coverage limits;

    d.  In leading Plaintiffs to believe that their request to increase coverage was being handled appropriately, while failing to take any action on such request;

    e.  In knowingly violating provisions of the Pennsylvania Unfair Insurance Practices Act, 40 P.S. Section 1171.5;

    f.  In engaging in fraudulent conduct which created the likelihood of confusion or misunderstanding on the part of Plaintiffs regarding the insurance benefits to which they were entitled;

    g.  In requiring its insured to maintain acceptable coverage amounts; while having no system to ensure requests for the same are honored;

    h.  In establishing a pattern and/or practice to delay and refuse payments of claims with substantial damages in order to reduce its liability, by collecting interest and/or other investment income on reserves and payments made by policy holders, rather than paying a damage claim in a timely manner as required by Pennsylvania law;

    i.  In charging and collecting a premium for extra Home Protector Coverage for losses with no intention of actually paying a claim for the same; and

    j.  In routinely making statements concerning coverage amounts and limits that are likely to deceive a reasonable consumer and did so deceive the Plaintiffs herein.

(ECF No. 11, at 17.)

*see Wenk v. State Farm & Cas. Co.*, 228 A.3d 540, 550 (Pa. Super. Ct. 2020), it is less clear to the Court, based on the face of the Amended Complaint, which of Plaintiffs' allegations are referring to Defendant's conduct in and around the claim-handling stage and which might be referring to an alternative moment in time, thus overcoming any definitional bar from coverage under the UTPCPL. (ECF No. 11, at 17.)

Although Plaintiffs' Amended Complaint cites generally to the UTPCPL's definitions of "unfair or deceptive acts or practices," the Court, with guidance from Plaintiffs' Response (ECF No. 19, at 19), turns its focus to the following definitions of unfair or deceptive acts: (1) failure "to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made" pursuant to § 201-2(4)(xiv); and (2) conduct that creates "a likelihood of confusion or misunderstanding" pursuant to the catch-all provision in § 201-2(4)(xxi).

First, to state a claim under the Pennsylvania UTPCPL, a plaintiff "must plead elements of common law fraud." *Plaum v. Jefferson Pilot Fin. Ins. Co.*, No. 4-4597, 2004 WL 2980415, at *3 (E.D. Pa. Dec. 22, 2004) (citing *Glatthorn v. Independence Blue Cross*, 34 F. App'x 420, 422–23 (3d Cir. 2002), and *Booze v. Allstate Ins. Co.*, 750 A.2d 877, 880 (Pa. Super. Ct. 2000)). To plead common law fraud under Pennsylvania law, a plaintiff must plausibly allege (1) a representation that is (2) material to the transaction, (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true; (4) intent to mislead another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) injury proximately caused by the reliance. *See Shuker v. Smith & Nephew PLC*, 885 F.3d 760, 778 (3d Cir. 2018). These elements reflect the requirements under Federal Rule of Civil Procedure 9(b), whereby a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake."

16

Specifically, for allegations of deceptive acts under § 201-2(4)(xiv), "only malfeasance and the improper performance of a contractual obligation, raises a cause of action under the [UTPCPL], and an insurer's mere refusal to pay a claim, the failure to perform a contractual duty, is not actionable." *Horowitz v. Fed. Kemper Life Assur. Co.*, 57 F.3d 300, 307 (3d Cir. 1995) (citing *Gordon v. Pennsylvania Blue Shield*, 548 A.2d 600, 604 (Pa. Super. Ct. 1988)). Also relying on *Gordon*, the Third Circuit, in a nonprecedential opinion, held that "mistake and incompetence are not actionable under either the UTPCPL or common law fraud." *Glatthorn v. Independence Blue Cross*, 34 F. App'x 420, 423 (3d Cir. 2002) (citing *Gordon*, 548 A.2d at 600). The facts alleged in Plaintiffs' Amended Complaint that appear to go to § 201-2(4)(xiv), such as "leading Plaintiffs to believe that their request to increase coverage was being handled appropriately"; "misrepresenting the ability or intention of [Defendant's] representative to determine appropriate limits"; and "requiring its insured to maintain acceptable coverage amounts, while having no system to ensure requests for the same are honored," do not state a claim actionable under the UTPCPL because these allegations do not facially show anything more than nonfeasance on behalf of Defendant. (ECF No. 11, at 17.)

Next, the Court assesses Plaintiffs' allegations that the Court construes as likely pertaining to the UTPCPL's catch-all definition, conduct creating "a likelihood of confusion or misunderstanding." Under this definition, "Pennsylvania courts have interpreted [this] section broadly to cover a wide variety of fraudulent acts," *Schroeder v. Acceleration Life Ins. Co.*, 972 F.2d 41, 46 (3d Cir. 1992) (surveying numerous Pennsylvania state court cases). Despite its broad applicability, pleading standards still apply. *See Shuker*, 885 F.3d at 778 (heightened pleading requirements). Accordingly, aside from Plaintiffs' allegations made in subparagraphs (b), (i), and (j) in paragraph ninety-four (94) of the Amended Complaint, the Court concludes

17

that the rest of the statements alleged are conclusory. (ECF No. 11, at 17 ¶ 94.) As such, the Court may not consider these averments as part of its analysis regarding whether Plaintiffs have made a plausible showing of entitlement to relief under the UTPCPL. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (explaining that in reviewing a motion to dismiss, the district court must strike conclusory allegations).

Though less conclusory in nature, Plaintiffs still fail to plead the allegations in subparagraphs (b), (i), and (j) with enough particularity to make out a claim under the UTPCPL. *See Shuker*, 885 F.3d at 778. Specifically, Plaintiffs have not alleged whether they are relying on conduct surrounding Defendant's Home Protector Coverage claim handling, which would be barred, or whether Plaintiffs are clearly relying on Defendant's conduct prior to the claims handling stage, such as statements made over the phone. *Cf. Wright v. N. Am. Life Assur. Co.*, 539 A.2d 434, (Pa. Super. Ct. 1988) (highlighting that where the defendant had alleged "particular conduct of the Defendants," the UTPCPL applied).

Defendant additionally argues that Plaintiffs' UTPCPL claim is barred by the gist of the action doctrine. (ECF No.15, at 22.) The Court concludes that the doctrine likely does not apply to this factual situation. *See Smith v. Lincoln Ben. Life Co.*, 395 F. App'x 821 (3d Cir. 2010). In *Smith*, the Third Circuit concluded that the gist of the action doctrine does not appear to apply to misrepresentation claims arising from an oral statement. *Id.* (relying on the gist of the action doctrine as described in *Pediatrix Screening, Inc. v. TeleChem Intern, Inc.*, 602 F.3d 541 (3d Cir. 2010)). In that case, the plaintiff alleged that an insurance company orally "misrepresented that it would pay [a] life insurance benefit." *Id.* at 823. The plaintiff brought a common law negligent misrepresentation claim, and the lower court held that the claims were barred by the gist of the action "because any representations by [the insurance company] were done in the context of the

contractual relationship[.]" *Id.* The Third Circuit, however, disagreed and held that the gist of the action doctrine would not have applied to the alleged oral statement, but affirmed dismissal on the pleading grounds. *Id*. at 824. Regardless of the gist of the action doctrine's applicability to the factual situation here, Plaintiffs, like the plaintiff in *Smith*, have "failed to plead all that [is] necessary for this claim." *Id*. Not only have Plaintiffs not pled with particularity as to whether an oral statement by Defendant's call center representative or some other alleged conduct is the crux of their UTPCPL claim, it also does not appear to the Court, based on its reading of the Amended Complaint, that Plaintiffs have alleged the elements required to demonstrate a UTPCPL claim under Pennsylvania law. *Shuker v. Smith & Nephew PLC*, 885 F.3d 760, 778 (3d Cir. 2018). Here's why.

While "intent . . . and other conditions of a person's mind may be alleged generally," Plaintiffs "must state with particularity the circumstances constituting fraud." *Id*. Missing here are sufficient allegations of "the date, time, and place of the fraud" or sufficient allegations "that otherwise inject precision or some measure of substantiation into a fraud allegation" that would "place the defendant on notice of the precise misconduct with which it is charged." *Id*. at 778 (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). In their Amended Complaint, Plaintiffs have not alleged with any level of precision the "date, time, and place" of the alleged deceptive act. *Id*. Nor do Plaintiffs' averments offer any sort of contextual substantiation to their fraud allegations, as they have not precisely described or identified which of Defendant's representations are the crux of their claim.

In sum, while Plaintiffs' averments of deceptive conduct are not categorically barred by the UTPCPL to the extent set out above, Plaintiffs have not pled their claim with the level of

particularity required by Pennsylvania law. Accordingly, the Court grants Defendant's Motion to Dismiss as to Count IV without prejudice and with leave to amend.

**IV.**     **CONCLUSION**

To conclude, Defendant's Motion to Dismiss (ECF No. 14) is **GRANTED IN PART** and **DENIED IN PART**. The portions of Counts I and II of the Amended Complaint related to the Home Protector Coverage will proceed. The balance of Counts I and II, along with III and IV, are **DISMISSED WITHOUT PREJUDICE** and with leave to amend. (*Id.*) Plaintiffs have twenty-one (21) days from the date of this Opinion and its accompanying Order to file a Second Amended Complaint. If such should not be timely filed, any dismissal without prejudice described herein shall convert to one with prejudice without further notice or Order.

s/ Mark R. Hornak
Mark R. Hornak
Chief United States District Judge

cc:     All counsel of record